IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

UNITED STATES OF AMERICA,          )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )        No. 09-20504-SHM/dkv
                                   )
FREEMAN GATEWOOD,                  )
                                   )
        Defendant.                 )

_____

REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION TO SUPPRESS

_____

        The defendant, Freeman Gatewood, was indicted on one count of
possessing a firearm as a convicted felon in violation of 18 U.S.C.
§922(g).   Before the court is Gatewood's motion to suppress a
Savage Arms 12 gauge shotgun found on his person during an
investigative stop and frisk on July 20, 2009.   Gatewood alleges
the firearm was obtained in violation of his Fourth Amendment right
to be free from unreasonable searches and seizures.   Gatewood's
motion was referred to the Unites States Magistrate Judge for a
report and recommendation pursuant to 28 U.S.C. § 636 (1)(B) and
(C).

        The court held an evidentiary hearing on January 25, 2011.   At
the hearing, the government presented four witnesses: (1) William
McKinney; (2) Officer Gerard Tuznik of the Memphis Police
Department ("MPD"); (3) Officer Eric Moore of the MPD; and (4)

Officer Clinton Langham of the MPD.  The defendant did not call any witnesses.  After careful consideration of the statements of counsel, the testimony of witnesses, and the briefs of the parties, the court submits the following findings of fact and conclusions of law and recommends that the motion to suppress be denied.

### PROPOSED FINDINGS OF FACT

On July 15, 2009, at 12:12 a.m., Officer Gerard Tuznik stopped a GMC pickup truck, tag # TN 945-GXP, for a broken headlight. Gatewood was the driver and only occupant of the truck, and he presented a Tennessee State I.D. as his only identification. Officer Tuznik could not run a check on Gatewood's name because the system was down, so he issued him a ticket, #699260, for a broken headlight and not having a driver's license.

At 4:45 a.m. on July 15, 2009, William McKinney reported his truck had been stolen from his residence at 797 Claybrook Avenue to the MPD, and Officer Eric Moore responded.  McKinney told Officer Moore that he had last seen his truck at 7:00 p.m. the previous evening, parked in his backyard, and had noticed it was gone at 2:30 a.m. on July 15, 2009, when he went to get his medicine out of his truck.  He had not given anyone permission to drive his vehicle.

Officer Moore gave a description of McKinney's stolen vehicle over the radio, a GMC truck with license the plate # TN 945-GXP. Upon hearing the broadcast, Officer Tuznik realized this was the

same vehicle he had stopped earlier that night and went to the scene with his partner Office Langham.  Upon confirming the two vehicles were the same, Officers Tuznik and Langham attempted to locate Gatewood by visiting the address listed on his Tennessee I.D. and noted on the citation, 1196 Gant Place.  Upon arriving at 1196 Gant Place, Officers Tuznik and Langham were informed by the occupant that she was Gatewood's sister and that Gatewood only used the house for a mailing address.  She advised the officers that the best place to locate her brother would be near two liquor stores on Jackson Avenue.

Officer Tuznik was off work from July 16th until July 20th when he returned to duty.  Upon reporting for duty on the 9 p.m. to 5 a.m. shift, he asked if Gatewood had been arrested and was told no. Officer Tuznik then drove to Jackson Avenue where the two liquor stores were located in an attempt to find Gatewood.  He did not find him at the first store.  While driving on Jackson Avenue to the second store around 9:20 p.m., Officer Tuznik spotted Gatewood walking.  He stopped his vehicle and approached Gatewood in an effort to investigate the theft of McKinney's truck.  Officer Tuznik detained Gatewood and initiated a safety pat-down.  Officer Tuznik testified that he was in a violent area, known for assaults, drugs, murder, and where many people are armed with guns, and he felt it was necessary for his safety to initiate the pat-down.  Officer Tuznik further testified that when patting down Gatewood he felt

3

something in his shirt, and Gatewood advised him it was a knife. Officer Tuznik then handcuffed Gatewood and searched him, finding a loaded sawed off shotgun 22 inches long with a 6 and 3/4 barrel and one shell in Gatewood's shirt.   When Officer Tuznik removed Gatewood's hat, a bag of crack cocaine fell out.   After Officer Tuznik discovered the shotgun and crack cocaine, Officer Langham arrived on the scene.   Officers Tuznik and Langham questioned Gatewood about where the stolen truck was located.   Gatewood informed the officers where the truck was located, and Officer Langham followed his directions, finding the truck parked behind a vacant house at 739 T.M. Henderson Avenue.

All four witnesses testified credibly and consistently, and the court finds that the facts as set out above are undisputed.   The only discrepancy was in McKinney's testimony where he stated that he last saw his truck between 4 or 5 p.m. on July 14th.   The police report stated that McKinney said he had last seen the truck at 7 p.m. on July 14th.   However, the court finds that this discrepancy does not affect McKinney's credibility.

PROPOSED CONCLUSIONS OF LAW

When a search and a seizure are undertaken without a warrant, the government has the burden of proving probable cause or that the conditions of a temporary *Terry* investigative stop have been met. *See Terry v. Ohio*, 392 U.S. 1 (1968) (permitting an investigative stop and frisk for weapons); *U.S. v. Winfrey*, 915 F.2d 212, 216 (6th

4

Cir. 1990) (placing the burden of proof upon the government to satisfy the conditions of a *Terry* seizure).  A warrantless search is *per se* unreasonable except for a few well designed exceptions. *Katz v. United States,* 389 U.S. 347, 357 (1967); *United States v. Lewis,* 504 F.2d 92, 100 (6th Cir. 1974).  Among these exceptions are so-called *Terry* "stop and frisk" searches in connection with an investigative stop.  *Terry v. Ohio,* 392 U.S. 1 (1968).  In *Terry*, the Supreme Court held that:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity is afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identified himself as a policeman and makes reasonable inquiries, and where nothing in the initial states of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*Terry,* 392 U.S. at 30-31.  The inquiry in such cases is two-part: whether the initial stop and subsequent frisk were reasonable under the Fourth Amendment.

A.   Reasonableness of Initial Stop

The fundamental inquiry under *Terry* is whether officers "have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez,* 449 U.S. 411, 417-418 (1981).  This requirement of a particularized suspicion has two prongs.  *Id.* at 418.  The assessment of whether

the officer had a particularized suspicion must be based on the totality of the circumstances known to the officer at the time of the stop, *id.,* and that assessment must "arouse a reasonable suspicion that the particular person being stopped has committed or is about to commit a crime." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129-30 (quoting *Cortez*, 449 U.S. at 418, and *Terry*, 392 U.S. at 21 n.18).  The primary bases for a reasonable suspicion are a police officer's own personal observations, and the officer's knowledge that a crime has been committed. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (holding there was reasonable suspicion to stop based on police observation of unprovoked flight holding an opaque bag); *United States v. Hensley,* 469 U.S. 221, 232-35 (1985) (holding there was reasonable suspicion to stop an automobile driven by a suspected robbery accomplice based on information from a bulletin issued by another police department).  "The officer must be able to articulate more than an 'inchoate and unparticularized suspicion' or a 'hunch' that criminal activity is afoot." *Wardlow,* 528 U.S. at 123-24 (quoting *Terry,* 392 U.S. at 27 n.2).

In *Hensley*, the Supreme Court addressed for the first time whether a *Terry* investigatory stop applied when police suspected a person was involved in a completed crime as opposed to being involved in ongoing criminal activity or about to commit a crime. *Hensley*, 469 U.S. at 227.  The Court held that if police have a reasonable suspicion, grounded in specific and articulable facts,

"that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion." *Id.* at 229.  There is no automatic barrier that "precludes police from stopping persons they suspect of past criminal activity unless they have probable cause for arrest." *Id.* at 227.

When Officer Tuznik stopped Gatewood on July 20, 2009, he had a particularized and objective basis of suspecting him of having committed a crime.  Officer Tuznik first encountered Gatewood when he issued him a ticket while Gatewood was driving a GMC truck license tag # TN 945-GXP at 12:12 a.m. on July 15, 2009.  Officer Tuznik later learned the same truck had been stolen, and McKinney, the victim, had last seen it at 7:00 p.m. on July 14, 2009.  McKinney testified that he did not loan anyone his truck and did not know Gatewood.  On July 20, 2009, Officer Tuznik returned to duty and was informed that Gatewood had not been picked up or questioned.

Based on the totality of the circumstances known to Officer Tuznik at the time he located Gatewood on July 20, 2009, it was reasonable for him to stop Gatewood to investigate the truck theft.  Officer Tuznik had previously observed Gatewood driving the truck the night it was stolen and also knew that no one had permission to drive the truck.  Furthermore, he knew that the truck had not been found or returned since it was stolen.  Based on his personal

observations, Officer Tuznik had a reasonable articulable suspicion that Gatewood had committed a crime.

Accordingly, it is submitted that the stop was lawful under the *Terry* doctrine.

B.   Reasonableness of Frisk

Once an officer has the requisite reasonable suspicion based upon the totality of the circumstances to conduct a stop, the officer may conduct a pat-down search to determine whether the person is carrying a weapon, if the officer has a justifiable belief that the individual stopped is armed and presently dangerous to the officer or to others.  *Terry,* 392 U.S. at 24.

When Officer Tuznik stopped Gatewood, he had a reasonable suspicion that Gatewood was involved with the truck theft.  Officer Tuznik testified that the area where he stopped Gatewood is a high crime area where many violent crimes occur and people are armed. In addition, it was night time.  That knowledge, along with his suspicion that Gatewood had committed a crime, gave Officer Tuznik reason to believe that Gatewood could be armed and dangerous. Officer Tuznik was justified in frisking Gatewood out of concern for his own safety.  *See Terry,* 392 U.S. at 24 (explaining that if an officer is justified in believing that an individual is armed, it is unreasonable to deny the officer power to take necessary measures to determine whether the person is in fact carrying a weapon).  *See also*, *United States v. Green*, 157 Fed. Appx. 853, 2005 WL 3275601

8

(6th Cir. 2005) (unpublished opinion) (holding that pat-down was permissible for officer safety "particularly in the area where the encounter occurred.")  The officer need not have a particularized reason for believing the suspect possessed a weapon.  *See United States v. Winbush*, 124 F.3d 201, 1997 WL 476581 at *2 (6th Cir. 1997).

Accordingly it is submitted that the frisk was reasonable under the *Terry* doctrine.

CONCLUSION

Officer Tuznik's actions on July 20, 2009, meet the criteria of a *Terry* stop.  Under the totality of the circumstances, he had a particularized objective basis for his suspicion that Gatewood had stolen a truck, based on the fact he observed Gatewood driving the truck after the owner had last seen it.  This reasonable suspicion justified an initial stop of Gatewood which happened in a violent, high crime area where it was Officer Tuznik's experience that people are armed.  Officer Tuznik's knowledge and experience, combined with the fact that it was at night, justified Officer Tuznik's frisk of Gatewood out of concern for his own safety.

Accordingly, it is recommended that Gatewood's motion to suppress the fruits of the frisk be denied.

Respectfully submitted this 8th day of March, 2011.

s/Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE