IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 09-20504 |
| ) | |
| **FREEMAN GATEWOOD,** ) | |
| ) | |
| Defendant. ) | |

---

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS AND ADOPTING REPORT AND RECOMMENDATION**

---

Before the Court is Defendant Freeman Gatewood's ("Gatewood") Motion to Suppress, the Report and Recommendation of Magistrate Judge Diane K. Vescovo ("Report"), and Gatewood's Objections to the Report. (See Mot. to Suppress, ECF No. 46; Report and Recommendation on Def.'s Mot. to Suppress, ECF No. 72 ("Report"); Objections to Report and Recommendation, ECF No. 73 ("Objections").) Plaintiff United States of America (the "Government") has responded to Gatewood's Objections. (See Resp. of the United States to the Def.'s Objections to the Report and Recommendation of the United States Magistrate Judge, ECF No. 75.) ("Resp.") For the following reasons, Gatewood's Objections are OVERRULED, the Report of the Magistrate Judge is ADOPTED, and the Motion to Suppress is DENIED.

**I.   Procedural and Factual Background**

On December 15, 2009, Gatewood was indicted for possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g).  (See Indictment, ECF No. 1.)  Gatewood filed a motion to suppress the firearm on December 17, 2010.  (See Mot. to Suppress.)  The Government responded on December 29, 2010.  (See Mem. and Authorities in Resp. to Def.'s Mot. to Suppress, ECF No. 48.)

On the day Gatewood filed his motion, the Court referred it to the Magistrate Judge.  (See Order of Reference, ECF No. 47.)  On January 25, 2011, the Magistrate Judge held a hearing, during which four witnesses testified: (1) William McKinney ("McKinney"); (2) Officer Gerard Tuznik ("Officer Tuznik" or "Tuznik") of the Memphis Police Department ("MPD"); (3) Officer Eric Moore ("Officer Moore") of the MPD; and (4) Officer Clinton Langham ("Officer Langham") of the MPD.  (See Report 1-2.)  On March 3, 2011, the Magistrate Judge filed her Report, recommending that the Court deny Gatewood's Motion to Suppress.  (See Report 2.)  Gatewood filed his Objections on March 21, 2011, and the Government has responded.  (See Objections; Resp.)

The charge against Gatewood stems from a series of events that began on July 15, 2009.  (See Report 2.)  At 12:12 a.m. that day, Officer Tuznik stopped a GMC pick-up truck with Tennessee license plate number 945-GXP after he noticed the

2

truck had a broken headlight. (Id.) Gatewood, who was driving the truck, presented a Tennessee-issued identification card instead of a driver's license, but Officer Tuznik was unable to check Gatewood's name because the system for doing so was not operating. (Id.) After issuing Gatewood citations for a broken headlight and driving without a license, their encounter ended. (Id.)

Approximately four hours later, at 4:45 a.m., Officer Moore received a call from McKinney, who reported that his truck had been stolen from his residence at 797 Claybrook Avenue. (Id.) McKinney told Officer Moore that he had last seen the truck at 7:00 p.m. on July 14, 2009, and that he had not noticed it was missing until he went to retrieve his medicine from the truck at 2:30 a.m. on July 15, 2009. (Id.) Officer Moore relayed a description of McKinney's truck over the MPD radio system, stating that it was a GMC truck with Tennessee license plate number 945-GXP. (See id.)

When Officer Tuznik heard the description of the truck, he realized that the truck McKinney had reported stolen was the same truck that he had stopped for a broken headlight at 12:12 a.m. (Id. at 2-3.) After confirming the trucks were the same, Officer Tuznik and his partner, Officer Langham, went to the address that had been listed on Gatewood's Tennessee identification card: 1196 Gant Place. (Id.) When the officers

3

arrived at that address, the occupant told them that she was Gatewood's sister and that Gatewood used the address for mail but did not live there. (Id.) She told them that the best place to locate Gatewood was in or near two liquor stores on Jackson Avenue. (Id.)

When he reported for his 9 p.m. to 5 a.m. shift on July 20, 2009, after several days off duty, Officer Tuznik asked whether Gatewood had been arrested. (Id.) After learning that Gatewood remained at large, Officer Tuznik drove to the area of Jackson Avenue that Gatewood's sister had described. (Id.) Officer Tuznik checked one of the liquor stores, but Gatewood was not there. (Id.) As Officer Tuznik was driving toward the second store around 9:20 p.m., he saw Gatewood walking along Jackson Avenue. (Id.) Officer Tuznik stopped his vehicle and approached Gatewood to inquire about McKinney's truck. (Id.)

When Officer Tuznik detained Gatewood, he conducted a pat-down. (Id.) At the hearing, Officer Tuznik testified that the pat-down was necessary for his safety. (Id.) According to Officer Tuznik, he had detained Gatewood in an area known for violent crime and illegal drugs, where many individuals carry firearms. (See id.) During the pat-down, Officer Tuznik felt something in Gatewood's shirt, and Gatewood told him it was a knife. (Id. at 3-4.) After handcuffing Gatewood, Officer Tuznik searched him and found a loaded, sawed-off, twenty-two-

4

inch shotgun with a six-and-three-quarter inch barrel and one shell in his shirt. (Id. at 4.) When Officer Tuznik removed Gatewood's hat, he found a bag of crack cocaine. (Id.) Officer Langham arrived on the scene, and the two officers questioned Gatewood about where McKinney's truck was located. (Id.) Following Gatewood's directions, they found the truck behind a vacant house at 239 T.M. Henderson Avenue. (Id.)

## II. Standard of Review

"A district judge must determine de novo any part of a magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C). After reviewing the evidence, the court is free to accept, reject, or modify the proposed findings or recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). The district court need not review—under a de novo or any other standard—those aspects of the report and recommendation to which no specific objection is made. Thomas v. Arn, 474 U.S. 140, 150 (1985). The district court may adopt the findings and rulings of the magistrate judge to which no specific objection is filed. Id. at 151; United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981).

## III. Analysis

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects against

5

unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches and seizures are per se unreasonable unless they are covered by a specific exception. See Minnesota v. Dickerson, 508 U.S. 366, 372 (1993) (citing Thompson v. Louisiana, 469 U.S. 17, 19-20 (1984)). One of those exceptions is a "stop and frisk" under Terry v. Ohio, 392 U.S. 1 (1968.)

Under Terry, "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous," the officer may conduct an investigatory stop and a limited search of the person. See 392 U.S. at 30-31. In that situation, "an officer may legally search for weapons if a reasonably prudent officer in the same circumstances would be justified in believing that his safety or that of others was threatened." United States v. Williams, 962 F.2d 1218, 1223 (6th Cir. 1992) (citing Terry, 392 U.S. at 27 and United States v. Paulino, 935 F.2d 739, 746 (6th Cir. 1991)).

The Sixth Circuit has articulated a two-part analysis to determine the constitutionality of a Terry stop and frisk. United States v. Caruthers, 458 F.3d 459, 464 (6th Cir. 2006) (citing United States v. Davis, 430 F.3d 345, 354 (6th Cir. 2005)). Courts first ask "whether there was a proper basis for the stop, which is judged by examining whether the law

enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion." Davis, 430 F.3d at 345 (quoting United States v. Garza, 10 F.3d 1241, 1245 (6th Cir. 1993)). If the stop was proper, courts consider the frisk, asking "whether the degree of intrusion . . . was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." Id. (quoting Garza, 10 F.3d at 1245).

Gatewood does not object to the Magistrate Judge's factual findings. He challenges two conclusions of law: (1) that the stop of Gatewood was reasonable and (2) that the frisk of Gatewood was reasonable. (See Objections 1-2.)

### A. Reasonableness of Stop

Before conducting an investigatory stop under Terry, officers must have reasonable suspicion—"a particularized and objective basis for suspecting the particular person . . . of criminal activity." United States v. Cortez, 449 U.S. 411, 417 (1981) (citations omitted); United States v. Gross, 624 F.3d 309, 315 (6th Cir. 2010) (citation omitted). Reasonable suspicion can be based on criminal activity that has already been completed. See United States v. Hensley, 469 U.S. 221, 229 (1985). "[I]f police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was

7

involved in or is wanted in connection with a completed felony, then a Terry stop may be made to investigate that suspicion." Hensley, 469 U.S. at 234; see United States v. Davis, 341 F. App'x 139, 140 (6th Cir. 2009) (concluding that a reasonable suspicion that defendants had completed a felony justified a search under Terry, even if that suspicion was ultimately wrong); Dorsey v. Barber, 517 F.3d 389, 395 (6th Cir. 2008) (explaining that circumstances giving rise to reasonable suspicion of a completed felony can include information "derived from such sources as informant tips, dispatch information, and directions from other officers").

Gatewood argues that the MPD's stop of him was not reasonable because, under Hensley, the stop of a suspect following a completed crime must be conducted at the earliest opportunity after suspicion arises. (Id. at 1.) Gatewood argues that the five-day delay between Officer Tuznik's encounter with Gatewood on July 15, 2009, and his encounter with Gatewood on July 20, 2009, makes the stop unreasonable. (Id. at 2.) According to Gatewood, although the MPD had the information necessary to obtain an arrest warrant for Gatewood, it failed to do so, and therefore the warrantless stop on July 20, 2009, was unconstitutional. (See id. at 2.)

Under Sixth Circuit precedent, the "mere passage of time . . . does not negate the lawfulness of a stop" that is otherwise

8

justified under the circumstances. United States v. Marxen, 410 F.3d 326, 330 (6th Cir. 2005). "Rather, the time between the commission of the crime and the subsequent stop is simply one factor . . . to consider in determining whether officers had specific and articulable facts which constituted a reasonable suspicion." Id. "Hensley is not undermined where . . . police are not able to locate the suspect . . . immediately after the [felony] and during a time within which contraband and other fruits of the crime are more likely to be found." Id. at 330 n.4 (explaining that "the difference in a traffic stop occurring eleven days—as opposed to one or two days—following the criminal activity is not dispositive").

The Magistrate Judge concluded that, "[w]hen Officer Tuznik stopped Gatewood on July 20, 2009, he had a particularized and objective basis of suspecting him of having committed a crime." (Report at 7.) The information providing Officer Tuznik's basis for stopping Gatewood on that date was Tuznik's having issued Gatewood a traffic citation and Tuznik's later learning that the truck Gatewood had been driving when Tuznik issued that citation was reported stolen. (See id.) Officer Tuznik became aware of those facts on July 15, 2009, when he heard Officer Moore's description of the truck that McKinney had reported missing over the radio. (See id. at 2-3.)

9

Gatewood does not dispute the Magistrate Judge's conclusion that the cited facts created a reasonable suspicion that Gatewood had stolen McKinney's truck. Indeed, in arguing that, although the MPD "had all of the information necessary to file an affidavit of complaint and obtain an arrest warrant," the MPD "sat on the information," Gatewood essentially concedes that, once Officer Tuznik heard Officer Moore's broadcast on July 15, 2009, Officer Tuznik had not only the reasonable suspicion sufficient for a Terry stop, but also the probable cause needed for an arrest warrant. (See Objections 2.) Under the totality of the circumstances, that five days elapsed before Officer Tuznik stopped Gatewood, does not destroy that reasonable suspicion. See Marxen, 410 F.3d at 330. Officer Tuznik's stop of Gatewood on July 20, 2009, was proper because Tuznik had a particularized and objective basis for suspecting that Gatewood had committed a felony. See Hensley, 469 U.S. at 234; Dorsey, 517 F.3d at 395. Gatewood's argument to the contrary is not well-taken.

**B. Reasonableness of Frisk**

Once an investigatory stop has been made, an officer "may conduct a limited protective search for concealed weapons" if he has reason to believe "that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." Adams v.

10

Williams, 407 U.S. 143, 146 (1972); see United States v. Boyett, 295 F. App'x 781, 784 (6th Cir. 2008); Bennett v. City of Eastpointe, 410 F.3d 810, 830-831 (6th Cir. 2005). The purpose of that search is for an officer "to ensure his own safety and that of others." United States v. Butler, 223 F.3d 368, 374 (6th Cir. 2000) (citation omitted).

The presence of criminal and drug activity in the area where an investigatory stop occurs may contribute to an officer's concern about his safety. See Adams, 407 U.S. at 147-148 (noting that the defendant had been "sitting alone in a car in a high-crime area at 2:15 in the morning" before the officer approached); United States v. Green, 157 F. App'x 853, 856 (6th Cir. 2005) (explaining that "particularly in the area in which the encounter occurred, a pat-down search was permissible"); United States v. Winbush, No. 96-4006, 1997 WL 476581, at *2 (6th Cir. Aug. 19, 1997) (noting that "the police were aware that there was drug activity in the area").

According to Gatewood, the Magistrate Judge upheld Officer Tuznik's pat-down of Gatewood "in large part because the day time encounter between Office[r] Tuznik and the defendant occurred in a high crime area." (Objections 2.) Because Officer Tuznik did not pat down Gatewood when Tuznik first encountered him in another high crime area on July 15, 2009,

11

Gatewood argues that the justification for doing so on July 20, 2009, was "erroneous." (See id.)

Because he approached Gatewood in an area known for violent crime and drug activity at night and had a reasonable suspicion that Gatewood had stolen McKinney's truck, Officer Tuznik had a justifiable belief that Gatewood was armed and dangerous.[1]  See Adams, 407 U.S. at 147-148; Green, 157 F. App'x at 856; Winbush, 1997 WL 476581, at *2.  Although Officer Tuznik did not pat down Gatewood during their initial encounter on July 15, 2009, at that time, Officer Tuznik had no reason to believe that Gatewood had completed a felony and therefore no reason to conduct a Terry stop and frisk.  Officer Tuznik's frisk of Gatewood was proper because he had a justifiable belief that Gatewood was armed and dangerous.  See Adams, 407 U.S. at 146; Boyett, 295 F. App'x at 784; Bennett, 410 F.3d at 830-831. Gatewood's argument to the contrary is not well-taken.

IV.  **Conclusion**

For the foregoing reasons, Gatewood's objections to the Magistrate Judge's Report and Recommendation are OVERRULED.  The Court ADOPTS the Report and Recommendation and DENIES the Motion

---

[1] Although Gatewood asserts that the encounter occurred during "day time" (see Objections 2), the Magistrate Judge found that the encounter occurred at night (see Report 3).  To the extent Gatewood's assertion that the encounter occurred during daylight hours might be construed as a challenge to the Magistrate Judge's factual finding, that challenge is not well-taken. Officer Tuznik's undisputed testimony was that he approached Gatewood on July 20, 2009, at 9:20 p.m.  (See Report 3-4.)  Nothing in the record suggests that the encounter occurred during "day time."

12

to Suppress. All findings and conclusions of the Magistrate Judge not discussed above have not been specifically objected to and are adopted.

So ordered this 15th day of April, 2011.

```
                          s/ Samuel H. Mays, Jr.
                          SAMUEL H. MAYS, JR.
                          UNITED STATES DISTRICT JUDGE
```